JaLeBLANC, J.
This matter involves the valuation of the improvements on the property of the Hotel Inter Continental New Orleans, located at 444 St. Charles Street, New Orleans, Louisiana, for purposes of assessment for an ad valorem tax. The dispute concerns a 1995 assessment, in the amount of $27,273,-100.00, imposed on the plaintiff, Panacon, *573 A Louisiana Partnership, owner of the hotel, by the Louisiana Tax Commission (LTC). Patricia Johnson, Assessor for the First Municipal District of Orleans Parish (1st MD), valued the improvements on the property at a fair market value (FMV) of $28,210,026.00. Panacon, hereinafter sometimes referred to as “the taxpayer”, appealed the initial assessment to the Orleans Parish Board of Review (Board of Review),[1] asserting that the FMV of the improvements on which the assessment was based should have been $17,061,-900.00. The Board of Review concurred with the assessor’s assessment of a FMV of the improvements of $28,210,026.00. Panacon then appealed the Board of Review finding to the LTC, pursuant to La. R.S. 47:1989.
The LTC disagreed with the Board of Review, assessing the FMV of the improvements at $27,273,100.00, the amount determined by the LTC’s staff appraiser. The LTC decision stated: (1) the assessor used an income approach, utilizing a 10% capitalization rate on all hotels in the 1st MD; (2) the assessor rejected using a cost approach, deeming it did not have an appropriate value, or a market approach, because either tax abatements or Resolution Trust Corporation sales would distort values; (3) the taxpayer did not utilize the cost, income, or market approach to arrive at an actual appraisal, but rather used an in-house 1995 hotel market study and produced a range of values for market rents, expenses, and net operating incomes, which were then used to determine an “income stream” valuation. This |3“range of income stream”, using a 12.11% capitalization rate, produced its proposed FMV of the improvements of $10,989,002.00; (4) the LTC’s staff appraiser, prior to the hearing, performed an independent appraisal of the property, using an income approach, and assigned a FMV of the improvements of $27,273,100.00, utilizing a 13.59% capitalization rate; (5) the LTC’s staff appraiser assigned a FMV of the improvements of $34,396,000.00 using a cost approach. (The staff appraiser was unable to utilize the market approach because he concluded sales comparisons were not applicable.) The LTC’s staff appraiser then selected the income approach in his “Reconciliation Analysis” as the most applicable valuation method for the FMV of the improvements.
Based on the foregoing FMVs presented at the hearing, the LTC, “applying its experience, technical competence and specialized ad valorem knowledge,” rejected the assessor’s, Panacon’s, and the Board of Review’s findings and, determining that the LTC’s staff appraiser’s income approach was the most appropriate, adopted the LTC’s staff appraiser’s FMV of the improvements of $27,273,100.00. Panacon then filed suit in district court, pursuant to La. R.S. 47:1998, seeking judicial review of the LTC decision. The district court affirmed the LTC decision, finding its decision to be reasonably supported by the evidence and no clear showing that the decision was arbitrary, capricious or manifestly erroneous. This appeal by Panacon follows.
Panacon assigns as error:
1) the income approach followed by LTC’s staff appraiser, as it was not in accord with industry standards; and
2) the value placed on the improvements, as it was significantly greater than that assigned to other properties of similar quality, resulting in a non-uniformly applied criteria throughout the state.
^STANDARD OF REVIEW
Judicial review of decisions of the LTC is authorized by La. R.S. *574 47:1998(A)(1); the extent of that review is governed by La. R.S. 49:964(F) and (G) of the Administrative Procedure Act. Hotel de La Monnaie Owners Association, Inc. v. Louisiana Tax Commission, 95-1009, p. 5 (La.App. 1 Cir. 12/15/95); 669 So.2d 455, 458. La. R.S. 49:964(F) confines judicial review to the record established before the LTC. La. R.S. 49:964(G) allows the district court to affirm or remand the LTC decision and restricts reversal or modification of that decision to instances in which substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
(1) in violation of constitutional or statutory provisions;
(2) in excess of the agency’s statutory authority;
(3) made upon unlawful procedure;
(4) affected by other error of law;
(5) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) manifestly erroneous in view of the reliable, probative and substantial evidence in the record.[2]
We note that the manifest error test of La. R.S. 49:964(G)(6) is used in reviewing facts as found by the agency, as opposed to the arbitrariness test used in reviewing conclusions and exercises of agency discretion. Kansas City Southern Railway Company v. Louisiana Tax Commission, 95-2319, p. 3 (La.App. 1 Cir. 6/28/96); 676 So.2d 812, 815.
APPLICABLE LAW
Pursuant to constitutional authority found at La. Const, art. VII, § 18, each assessor is charged with the responsibility of determining the fair market value of all property subject to taxation within his parish or district, at intervals of not more than four years. In addition, the Louisiana Constitution requires that the FMV be determined in accordance with |scriteria, established by law and applied uniformly throughout the state. La. Const, art. VII, § 18.
La. R.S. 47:2321 defines fair market value as follows:
Fair market value is the price for property which would be agreed upon between a willing and informed buyer and a willing and informed seller under usual and ordinary circumstances; it shall be the highest price estimated in terms of money which property will bring if exposed for sale on the open market with reasonable time allowed to find a purchaser who is buying with knowledge of all the uses and purposes to which the property is best adapted and for which it can be legally used.
La. R.S. 47:2323(C) provides as follows:
The fair market value of real and personal property shall be determined by the following generally recognized appraisal procedures: the market approach, the cost approach, and/or the income approach.
(1) In utilizing the market approach, the assessor shall use an appraisal technique in which the market value estimate is predicated upon prices paid in actual market transactions and current listings.
(2) In utilizing the cost approach, the assessor shall use a method in which the value of a property is derived by estimating the replacement or reproduction cost of the improvements; deducting therefrom the estimated depreciation; and then adding the market value of the land, if any.
(3) In utilizing the income approach, the assessor shall use an appraisal tech- *575 ñique in which the anticipated net income is processed to indicate the capital amount of the investment which produces the net income.
MOTION TO REMAND
Shortly before the scheduled oral argument in this matter, Panacon filed a motion to remand, requesting that this court remand the matter to the LTC. The gist of the motion to remand is that after the appeal had been filed and briefs submitted, the LTC re-evaluated the 1995 valuation of the Hotel Inter Continental, adopting the valuation proposed by Pana-con. Panacon asserts this re-evaluation calls for a remand.
Panacon’s motion to remand contains no authority for remand, save an appeal to the interest of justice. We find no statutory authority for the LTC to change an assessment after the taxes have been paid, without a statement |fimade under oath by the assessor that an erroneous assessment has been made. See La. R.S. 47:1990 and 1991. Therefore, we decline to remand this matter to the LTC to alter its original assessment without an oath by the assessor.
ASSIGNMENT OF ERROR NUMBER ONE
In the first assignment of error, the taxpayer argues that there were errors in the methodology used by the assessor and the LTC’s staff appraiser, caused by deviating from “industry standards” for hotel assessments. Panacon asserts the proper methodology, citing the International Association of Assessing Officers (IAAO), utilizes an adjustment for return on and return of personal property and employs a higher management fee. Pana-con argues the failure to employ industry standards resulted in a flawed assessment.
Our review of the record reveals the transcript[3] is replete with ellipses, indicating missing testimony, as well as question marks when the name of the person testifying was unknown. Moreover, the testimony does not contain or identify with particularity those exhibits which were offered, nor a ruling on the admissibility if objections were made. The record which was supplied to this court includes only the deficient transcript of the appeals heard the day of Panacon’s hearing and two appraisal reports, one prepared by the LTC’s staff appraiser and one by McNamara Associates (McNamara), the authorized agent for Panacon before the LTC. Remarkably absent from the record is the assessment by the assessor and the documentation upon which that assessment is based.
The LTC’s staff appraiser’s report contains a transmittal letter which includes the staff appraiser’s conclusions, budding and site data and other salient facts, analysis and conclusions using the income, cost and sales |7comparison approaches,[4] a reconciliation analysis, a certificate of appraisal, the underlying assumptions,[5] the appraiser’s qualifications, and the Hotel Inter Continental’s 1994 income and earnings statement. The appraisal report submitted by the taxpayer contains Panacon’s appeal forms, salient facts, an income approach analysis, the Hotel Inter Continental’s 1994 income and earnings statement, a “1995 Hotel Valuation Statistics” (source unknown), “Market Data” which consists *576 of the results of a 1995 hotel market study-conducted by McNamara and copies of six non-consecutive pages of printed material, prior LTC appeal decisions of other New Orleans hotels, a comparison of 1996 assessed FMYs of other New Orleans hotels (source unknown) with photos and a map, and other area maps.
In support of its argument for industry standards, Panacon argues that during the course of the hearings before the LTC, representatives for Panacon stated that it had requested from the IAAO their methodology. At the hearing Panacon’s representatives referred to a book which presumably was published by the IAAO and stated the book was presented and shown to the Board of Review.[6] Panacon has not produced any expert testimony to support its assertions that there are industry standards or that the IAAO methodology is the accepted industry standard. This assignment is without merit.
ASSIGNMENT OF ERROR NUMBER TWO
In its second assignment of error, Panacon argues the value placed on the property was significantly greater than other similar properties as a result of utilizing an assessment criteria which was not applied uniformly throughout the state as required by La. Const, art. VII, § 18. Pa-nacon |Rsupports this argument with a comparison of other comparable hotels, all within walking distance of each other, and concludes because there is such a disparity between the Hotel Inter Continental’s per room value of $62,455.00 and Marriott’s $42,152.00, the assessments were not conducted using criteria applied uniformly throughout the state.
La. Const, art. VII, § 18, provides, in pertinent part:
(A) Assessments. Property subject to ad valorem taxation shall be listed on the assessment rolls at its assessed valuation, which ... shall be a percentage of its fair market value. The percentage of fair market value shall be uniform throughout the state upon the same class of property.
[[Image here]]
(D) Valuation. Each assessor shall determine the fair market value of all property subject to taxation within his respective parish or district ... which shall be valued at fair market value by the Louisiana Tax Commission or its successor.... Fair market value and use value of property shall be determined in accordance with criteria which shall be established by law and which shall apply uniformly throughout the state. (Emphasis added.)
LTC’s Staff Appraiser’s Appraisal
After a thorough review of the record before us, we are unable to determine what criteria was utilized by the LTC’s staff appraiser or if that criteria was applied uniformly. Although the staff appraiser’s report is contained in the record, the staff appraiser was not called to testify and neither the assessor nor the taxpayer questioned the staff appraiser concerning his report. The report does not contain the supporting data admittedly used in formulating the appraisal. With the exception of the 1994 income statement, we are unable to locate in the record any testimony, evidence or exhibits in support of the staff appraiser’s report. Accordingly, the LTC’s decision to adopt the staff appraiser’s assessment was not reasonably supported by the record, and the district court’s affirmation of that decision was manifestly erroneous, as well as legally in error. The district court’s judgment, as well as the LTC decision upon which it was based, must be reversed.
*577 | gPanacon’s Appraisal
In support of its proposed FMV, Pana-eon submitted an appraisal report which contains its income approach worksheet; however, the computer generated financial statement which follows does not support the figures used.[7] Further, the report contains no supporting documentation, only conclusory survey summaries. We find no support, either from testimony, evidence, or exhibits, for Panacon’s appraisal.
Assessor’s Assessment
In support of her assessment, the assessor’s testimony referenced the “model” she used in employing the income approach, which she stated she applied uniformly.[8] However, she did not present any support for her model and testified she “didn’t bring [her] whole model” or “have the breakdown with [her]”. Thus, the record contains no evidence to support the assessor’s valuation, and there was no evidence before the LTC from which a decision could be made.
CONCLUSION
Because the LTC’s conclusion to adopt the staff appraiser’s appraisal cannot reasonably be supported by the record, and based on the lack of evidence in support of any of the proposed FMVs before the LTC, we must remand to the LTC. The LTC is hereby ordered to hold a hearing for the purpose of admitting and considering evidence in support of the assessment of the improvements on the property of the Hotel Inter Continental New Orleans as proposed by Panacon, Patricia Johnson, Assessor for the First Municipal District of Orleans Parish, and the LTC’s staff appraiser.
For the foregoing reasons, the judgment of the district court, affirming the assessment made by the LTC is hereby reversed; the assessment as found hnby the Louisiana Tax Commission is hereby reversed. This matter is remanded for further proceedings consistent herewith. Costs of this appeal, in the total amount of $1,898.79, are assessed against the appellant, Panacon, and the appellee, Assessor Patricia Johnson, in equal amounts.
REVERSED AND REMANDED.
PARRO, J., concurs with the result.

. The correctness of an assessment is subject to review by the parish governing authority, then by the LTC and finally by the courts. La. Const, art. VII, § 18; La. R.S. 47:1931, 1989, 1998; Hotel de La Monnaie Owners Association, Inc. v. Louisiana Tax Commission, 95-1009, p. 2 n. 4 (La.App. 1 Cir. 12/15/95); 669 So.2d 455, 457, n. 4; writ denied, 96-0956 (La.5/31/96); 673 So.2d 1030.

. La. Acts 1997, No. 128, § 1 amended La. R.S. 49:964(G)(6) and added subsection (G)(7); however, that act expressly provides that the amendment shall apply to all cases in which a decision has not been rendered on appeal as of June 12,1997. The district court, being the first appellate court of the LTC's decision, rendered its decision on April 28, 1997; accordingly, the amendments do not apply in this matter.

. The hearing before the LTC took place on November 29, 1995, along with appeals from assessments of seventeen other properties. The record in this matter included, by stipulation of the parties, the "full transcript and all exhibits filed in the appeal of the entire group of proceedings [sic] and all exhibits.” However, the record merely contains the deficient transcript of the hearings held on November 29, 1995, and two appraisal reports.

. Specific supporting data which was used for each approach was identified; i.e. rent schedules, taxes and insurance costs of the subject property and comparable properties and local labor and material costs. However, we are unable to locate or identify any supporting data in the record.

. These consisted of such givens as correct legal descriptions and good title.

. Photocopies of six non-consecutive pages, presumably from the IAAO book, were included in the McNamara appraisal.

. For example, there is a $12,961.00 difference between the room revenue amount listed on the appraisal worksheet and the total room revenue amount listed on the 1994 income statement.

. The assessor stated the only individual factor within her model which varied between hotels was the number of rooms.